Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:  (916) 443-6911
Facsimile:  (916) 447-8336
E-Mail:    mark@markmerin.com
           paul@markmerin.com

Attorneys for Plaintiffs
ROBERT MANN SR., VERN MURPHY-MANN,
DEBORAH MANN, ZACHARY MANN, and
WILLIAM MANN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, SAMUEL D. SOMERS JR., JOHN C. TENNIS, and RANDY R. LOZOYA,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |
|---|---|

## INTRODUCTION

Nearly a year ago, Joseph Mann, a 51 year old mentally ill man, was shot dead by two CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT police officers who poured 14 rounds into his body after twice unsuccessfully attempting to run him over with their police car. A community outcry demanded prosecution of the responsible officers, accountability for the blatant violation of Joseph Mann's civil and constitutional rights, and a transparent investigation. None of that has occurred making resort to the filing of this federal complaint necessary finally to obtain justice for Joseph Mann and his family.

This action is brought by ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN, each of whom are siblings of Joseph Mann, who was

1

unlawfully killed by CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT police officers JOHN C. TENNIS and RANDY R. LOZOYA on July 11, 2016.

**JURISDICTION & VENUE**

1. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 (in that they arise under the United States Constitution); 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution).

2. Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because the Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3. Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to E.D. Cal. L.R. 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Sacramento, California.

**PARTIES**

4. Plaintiff ROBERT MANN SR. is a resident of the State of California, County of Sacramento. Plaintiff ROBERT MANN SR. is an older brother of Joseph Mann.

5. Plaintiff VERN MURPHY-MANN is a resident of the State of California, County of Sacramento. Plaintiff VERN MURPHY-MANN is an older sister of Joseph Mann.

6. Plaintiff DEBORAH MANN is a resident of the State of California, County of Sacramento. Plaintiff DEBORAH MANN is an older sister of Joseph Mann.

7. Plaintiff ZACHARY MANN is a resident of the State of California, County of Sacramento. Plaintiff ZACHARY MANN is a younger brother of Joseph Mann.

8. Plaintiff WILLIAM MANN is a resident of the State of Florida, County of Palm Beach. Plaintiff WILLIAM MANN is an older brother of Joseph Mann.

9. Defendant CITY OF SACRAMENTO is a "public entity" within the definition of Cal. Gov. Code § 811.2.

10. Defendant SACRAMENTO POLICE DEPARTMENT is a "public entity" within the

2

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

definition of Cal. Gov. Code § 811.2.

11.  Defendant SAMUEL D. SOMERS JR. was, at all material times herein, the Chief of Police of Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT, acting within the scope of that agency or employment and under color of state law. Defendant SAMUEL D. SOMERS JR. is sued in his individual capacity.

12.  Defendant JOHN C. TENNIS is, and at all material times herein was, a law enforcement officer employed by Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT, acting within the scope of that agency or employment and under color of state law. Defendant JOHN C. TENNIS is sued in his individual capacity.

13.  Defendant RANDY R. LOZOYA is, and at all material times herein was, a law enforcement officer employed by Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT, acting within the scope of that agency or employment and under color of state law. Defendant RANDY R. LOZOYA is sued in his individual capacity.

## GENERAL ALLEGATIONS

14.  At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

15.  Joseph Mann was a 51 year old black man residing in Sacramento, California, in July 2016.

16.  Joseph Mann developed and began exhibiting mental illness-related issues in or around 2011, following the death of his mother.

17.  Joseph Mann was never a violent man, even when experiencing the effects of his mental illness. Joseph Mann never exhibited any violent tendencies or threatened violence to himself or others.

18.  Joseph Mann shared a close relationship and special bond with his siblings, including Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN. Their relationships with their brother, Joseph Mann, presupposed deep attachments, commitments, and distinctively personal aspects of their lives.

## The Killing of Joseph Mann

19.  On July 11, 2016, Joseph Mann was experiencing the effects of his mental health illness.

3

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

20. Joseph Mann was near 1125 Lochbrae Road, Sacramento, California, around 9:20 a.m.

21. Nearby residents observed Joseph Mann acting erratically, performing karate-style moves. Joseph Mann's actions were consistent with that of a person suffering from mental illness.

22. Two persons called 9-1-1 to report sightings of Joseph Mann.

23. The first caller reported that a man was carrying a knife, which he was throwing up into the air, and had a black gun in his waistband. The caller later reported that the man "pulled the gun out" of his waistband.

24. The second caller reported that there was a mentally ill man with a gun and a knife outside her apartment and that there were children around. The caller stated that the man was throwing and flipping the knife in the air and catching it. The caller later stated that she did not actually see a gun—rather, another of her neighbors had told her that the man had a gun.

25. Joseph Mann did not have a gun and the reports that he did were false.

26. Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT's police officers, including Defendants JOHN C. TENNIS, RANDY R. LOZOYA, were dispatched to respond to the reports of a suspicious subject with weapons.

27. Dispatched officers were informed that the subject was walking towards Southgate Road.

28. Officers Frank Reyes and Bryan Gomez responded together in a patrol vehicle. Upon observing Joseph Mann, officer Gomez, using the vehicle's loudspeaker system, commanded Joseph Mann to get on the ground and drop the knife.

29. Joseph Mann questioned why the officers were confronting him. Officers Reyes and Gomez responded that they had received reports that he was carrying a gun. Joseph Mann denied that he had a gun. The officers observed that Joseph Mann was not carrying a gun in his hands and could not see a gun on his person. The officers commanded Joseph Mann to drop his knife.

30. Joseph Mann walked away from the officers' vehicle and proceeded west on Southgate Road, towards Del Paso Boulevard.

31. Officers Reyes and Gomez radioed that Joseph Mann was heading towards Del Paso Boulevard, a knife was in his right hand, that he was not complying, and that he was very hostile.

32. Joseph Mann reached Del Paso Boulevard. Officer Gomez again used the loudspeaker and

4

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

commanded Joseph Mann to put his hands in the air and drop the knife. On information and belief, Joseph Mann threw a metallic coffee mug near the front of Officers Reyes and Gomez's patrol vehicle. The officers radioed that Joseph Mann was being extremely hostile, was throwing stuff at them, and he still had the knife in his hand.

33. Joseph Mann continued walking northbound on Del Paso Boulevard while crossing the street.

34. Officers Benjamin Spencer and Michael Mantsch and Sergeant Michael Poroli arrived in other patrol vehicles.

35. Defendants JOHN C. TENNIS and RANDY R. LOZOYA arrived in a patrol vehicle. Defendant TENNIS was driving and Defendant LOZOYA was in the front passenger seat.

36. A dash-camera recorded conversations between Defendants TENNIS and LOZOYA inside of their vehicle.

37. Defendant LOZOYA said, "Fuck. Fuck this guy."

38. Defendant TENNIS said, "I'm gonna hit him."

39. Defendant LOZOYA responds, "Okay. Go for it. Go for it."

40. The dash-camera recorded Defendants TENNIS and LOZOYA's vehicle as it attempted to hit Joseph Mann.

41. Joseph Mann narrowly escaped being hit by the vehicle between the crosswalk at Del Paso Boulevard and Dale Avenue.

42. After failing to strike Joseph Mann, Defendants TENNIS and LOZOYA's vehicle came to an abrupt stop facing a gate along Dale Avenue.

43. Defendant TENNIS said, "Watch out, Randy."

44. Defendants TENNIS and LOZOYA's vehicle then backed up in reverse, and was again facing Joseph Mann.

45. Joseph Mann was standing on the sidewalk.

46. Defendants TENNIS and LOZOYA's vehicle again accelerated towards Joseph Mann, attempting to hit him.

47. Joseph Mann sprinted across Del Paso Boulevard to again avoid getting hit by the vehicle.

5

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

48. Defendants TENNIS and LOZOYA's vehicle again came to a stop.

49. Defendant TENNIS said, "We'll get him. We'll get him."

50. Defendants TENNIS and LOZOYA exited their vehicle and pursued Joseph Mann on foot, each with their service pistols drawn down on Joseph Mann.

51. A surveillance video recording from the Stoney Inn captured events occurring thereafter.

52. Joseph Mann crossed back towards the sidewalk, jogging along a string of closed storefronts on Del Paso Boulevard.

53. Defendants TENNIS and LOZOYA crossed the street toward Joseph Mann, closing the distance between them.

54. Joseph Mann stopped jogging and pointed with his left arm.

55. Defendants TENNIS and LOZOYA, who were chasing behind Joseph Mann, continued to advance towards him.

56. After Joseph Mann stopped and pointed with his left arm, Defendants TENNIS and LOZOYA immediately started shooting Joseph Mann.

57. Defendants TENNIS and LOZOYA were approximately 25 to 30 feet away from Joseph Mann when they first began shooting him.

58. Joseph Mann doubled over suddenly and lurched back, crumpling to the ground as Defendants TENNIS and LOZOYA continued to shoot him.

59. Even after Joseph Mann was falling to the ground, Defendants TENNIS and LOZOYA continued to advance on Joseph Mann, closing the distance, and continuing to shoot Joseph Mann.

60. In total, Defendants TENNIS and LOZOYA fired 18 shots at Joseph Mann, hitting him 14 times. Defendant TENNIS fired eight times, and Defendant LOZOYA fired 10 times.

61. Defendants TENNIS and LOZOYA's decision to shoot and kill Joseph Mann occurred less than 35 seconds after they attempted to run him over in their vehicle.

62. Joseph Mann died at the scene of the shooting.

**The City of Sacramento & Sacramento Police Department's Response**

63. On July 11, 2016, the same day as and immediately following the Joseph Mann shooting, and before any sufficient investigation could be conducted or completed in connection with the shooting,

6

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT issued a "Media Advisory/News Release" describing the Joseph Mann shooting, in relevant part, as follows:

> Officers continued to pursue the man who appeared to pose a significant risk to the community. Two additional officers arrived and chased after the subject near the 1300 block of Del Paso Road. The subject turned back towards them, armed with a knife. Fearing for their lives and the safety of the community, two officers discharged their firearms striking the man multiple times.

<https://www.sacpd.org/newsroom/releases/liveview.aspx?release_id=20160711-088>.

64. The press release's statements were later confirmed as false when video recordings of the shooting confirmed that Joseph Mann never moved towards Defendants TENNIS and LOZOYA in a manner that endangered anyone prior to their shooting him to death.

65. Defendants TENNIS and LOZOYA were put on a three-day paid leave following the shooting, and permitted to return to work on "modified duty" for some unknown duration thereafter.

66. Initially, Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT refused to release any recorded footage of the Joseph Mann shooting, despite public outcry and demand.

67. Later, Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT did release three dash-cam recordings and two 9-1-1 audio recordings related to the Joseph Mann shooting, but only after being substantial pressured was applied by members of the Sacramento City Council, civil rights activists, and media outlets, including The Sacramento Bee, which obtained from a citizen surveillance footage showing the shooting of Joseph Mann. Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT's release of information related to the shooting of Joseph Mann was only accomplished as a means of "damage control" and in a manner that attempted to maintain control over the narrative of the shooting.

68. The fallout and public backlash based on Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT's response to the Joseph Mann shooting, including efforts to withhold recordings and information related to the shooting from the public, was followed by Defendant SAMUEL D. SOMERS JR.'s decision to "retire" from his position as Chief of Police in December 2016.

### The Federal Litigation

69. On August 4, 2016, William Mann Sr., as Joseph Mann's father on behalf of Joseph Mann

7

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

and on behalf of himself, initiated litigation against Defendants CITY OF SACRAMENTO, JOHN C. TENNIS, and RANDY R. LOZOYA. *See Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. 2:16-cv-01847-WBS-DB.

70. On February 17, 2017, the William Mann Sr. litigation was disposed of by a Fed. R. Civ. P. 41(a)(1)(A)(ii) stipulated of dismissal, following a settlement payment by Defendant CITY OF SACRAMENTO in the amount of $719,000.00 to William Mann Sr.

**The Sacramento County District Attorney's Office's Response**

71. Pursuant to "protocol," the Sacramento County District Attorney's Office is obligated to "conduct an independent review of all officer-involved shooting incidents that result in injury or death, and other uses of force by law enforcement officers resulting in death within Sacramento County."

72. On January 25, 2017, the Sacramento County District Attorney's Office issued a memorandum containing factual findings and conclusions in connection with the shooting and killing of Joseph Mann. *See* <http://www.sacda.org/files/1414/8553/8646/OIS_--_Mann.pdf>.

73. In a false and blatantly biased memo, the Sacramento County District Attorney's Office reported that Defendants TENNIS and LOZOYA were "only approximately 15 feet away from [Joseph Mann]" when they were "forced" to make a "rapid decision" to shoot and kill Joseph Mann due to safety threats. The memo failed to acknowledge or to attribute any blame to Defendants TENNIS and LOZOYA for failing to employ de-escalation techniques, for failing to employ less than lethal force, and provoking the encounter that led to their decision to kill Joseph Mann.

74. Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT accepted and adopted the Sacramento County District Attorney's Office's memo's factual findings and conclusions in connection with the Joseph Mann shooting.

**MUNICIPAL & SUPERVISORY ALLEGATIONS**

75. Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR.'s failure to adequately train, supervise, and discipline their police force has created a cesspool of police misconduct and abuse.

76. Defendant SAMUEL D. SOMERS JR., acting as Police of Chief, was a policy-making authority for Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT as

8

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

it relates to the training, supervision, and discipline of police officers under his command, including use of excessive force.

77. Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR. knew or should have known that employees under their command, including Defendants JOHN C. TENNIS and RANDY R. LOZOYA, were inadequately trained, supervised, or disciplined resulting from their inadequate policies, customs, or practices.

78. Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR. maintained policies, customs, or practices deliberately indifferent or acquiescing to, or failed to maintain policies, customs, or practices when it was obvious that they were needed to prevent the use of unreasonable force against persons, particularly mentally ill persons, with whom their employees would necessarily have contact.

79. The presence of these policies, customs, or practices is confirmed by the killing of Joseph Mann and, specifically, the actions and inactions of Defendants JOHN C. TENNIS and RANDY R. LOZOYA. On information and belief, no re-training or discipline has resulted or occurred where:

 a)   Defendants JOHN C. TENNIS and RANDY R. LOZOYA failed to comply with mandatory policies of the Commission on Peace Officer Standards and Training, Learning Domain 37, as it pertains to approaching and engaging with mentally ill individuals;

 b)   Defendants JOHN C. TENNIS and RANDY R. LOZOYA failed to understand, appreciate, assess, and respond to irrational and non-compliant behavior commonly exhibited by mentally ill persons in interactions with law enforcement, without resorting to lethal force;

 c)   Defendants JOHN C. TENNIS and RANDY R. LOZOYA failed to appreciate the level of threat posed by mentally ill persons who are irrational and non-compliant, and to recognize that there was no real threat to themselves or others which could be used to justify the resort to lethal force;

 d)   Defendants JOHN C. TENNIS and RANDY R. LOZOYA failed to employ specialized techniques, such as maintaining physical distance ("comfort zones" or "boundaries"), non-threatening communications, de-escalation or "pulling-back," which modify the irrational

9

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

and non-compliant behavior of mentally ill persons, instead of resorting to lethal force;

e) Defendants JOHN C. TENNIS and RANDY R. LOZOYA failed to call for backup, including calling and consulting for advice and/or bringing to the scene persons trained in crisis intervention or others trained in how appropriately to deal with mentally ill persons without the use of legal force, when faced with the irrational and non-compliant conduct of mentally ill persons; and

f) Defendants JOHN C. TENNIS and RANDY R. LOZOYA failed to utlize less than lethal force available to them.

80. Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR. were or should have been on notice of these policies, customs, or practices, or the inadequacy of the policies, customs, or practices, through multiple sources, including:

i) Past and subsequent incidents of excessive force utilized by Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR.'s police force resulting in the filing of lawsuits, government claims, and citizens' complaints and the payment of settlements. For example, in *Halcomb v. City of Sacramento*, Eastern District of California, Case No. 2:14-cv-02796-MCE-DB, three police officers broke into the wrong residence seeking the subject of an arrest warrant and proceeded to use excessive force on a protesting occupant. The case was settled for $220,000 after it was discovered that a police officer lied about the existence of a warrant. *See* <http://www.sacbee.com/news/local/crime/article147296244.html>. In *Cain v. City of Sacramento*, Eastern District of California, Case No. 2:17-cv-00848-JAM-DB, a police officer grabbed, tackled, and punched a man without justification, and without realizing that he was being recorded. *See* <http://www.kcra.com/article/sacramento-pd-officer-beat-pedestrian-after-confrontation/9260550>.

ii) The multiple instances of misconduct involving Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR.'s police force, as described.

iii) The instances of misconduct that occurred in the open and in public by Defendants CITY

10

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR.'s police force, suggesting action with impunity.

    iv) The involvement of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR.'s police force in multiple instances of misconduct, as described above and reported elsewhere.

81. On information and belief, Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR. were or should have been on notice, in particular, of Defendants JOHN C. TENNIS's unfitness for duty and frequent resort to unreasonable force through multiple sources, including:

    a) Defendant JOHN C. TENNIS's involved in a 1998 fatal incident where a suspect, Albert Glenn Thiel, was killed after fleeing from police. A coroner listed "mechanical asphyxia due to blunt-force trauma of the neck" as the cause of death, after reviewing the evidence which included Defendant JOHN C. TENNIS's attempt to place a chokehold on the decedent. In subsequent litigation by the decedent family against Defendant JOHN C. TENNIS, the matter was settled prior to trial.

    b) Divorce proceedings wherein Defendant JOHN C. TENNIS's former spouse accused him of domestic violence and child abuse.

    c) Multiple investigations of child abuse by the Child Protective Services against Defendant JOHN C. TENNIS.

    d) A temporary restraining order issued against Defendant JOHN C. TENNIS by the El Dorado County Superior Court on May 23, 2012, based on a complaint by his former spouse. The order forbid Defendant JOHN C. TENNIS from carrying a firearm or ammunition. However, less than two weeks after the order issued, Defendant SAMUEL D. SOMERS JR., then-deputy chief of operations, wrote a letter to a El Dorado County Superior Court Judge, Kenneth Melikian, informing him that possession of a firearm was "a condition of continued employment" for Defendant JOHN C. TENNIS. As a result, the judge modified the order to allow Defendant JOHN C. TENNIS to carry a gun on the job but at no other time.

11

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

e) A 2014 internal affairs investigation by Defendant SACRAMENTO POLICE DEPARTMENT against Defendant JOHN C. TENNIS which was resolved with a written agreement and Defendant JOHN C. TENNIS admitting that he was plagued by "a long-term abuse of alcohol, which interfered with his ability to perform his duties" and required participation in an "educational based discipline" plan related to substance abuse, in lieu of a 40-hour suspension without pay for violations of department policy. Defendant JOHN C. TENNIS was subsequently checked into a residential alcohol addiction treatment facility to address his addiction to alcohol. However, Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT not only continued to employ Defendant JOHN C. TENNIS as a patrol officer, but also assigned him to a beat in Del Paso Heights, a high-crime area where officers often find themselves in stressful confrontations.

82. On information and belief, additional evidence and information related to Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR.'s policies, customs, or practices will be sought and obtained during the course of this litigation. Although access to the existence or absence of internal policies, customs, or practices, prior to discovery, is necessarily limited, on information and belief, Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR. have access to and/or knowledge of past events and to statements of internal policies, customs, or practices at issue and, in some respects, may be in sole possession of evidence and facts needed to support or refute these claims.

## FIRST CLAIM

### Deprivation of Association

**(First & Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

83. The First Claim is asserted by Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN against Defendants JOHN C. TENNIS and RANDY R. LOZOYA.

84. Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN reallege and incorporate the allegations of the preceding

12

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

paragraphs 1 to 82, to the extent relevant, as if fully set forth in this Claim.

85. Defendants JOHN C. TENNIS and RANDY R. LOZOYA, acting or purporting to act in the performance of their official duties as law enforcement officers, utilized unreasonable and excessive force in seizing and killing Joseph Mann, in violation of his Fourth and Fourteenth Amendment rights protected by the U.S. Constitution.

86. Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN shared intimate human relationships with their brother, Joseph Mann, that presupposed deep attachments and commitments to the necessarily few other individuals with whom they shared not only a special community of thoughts, experiences, and beliefs, but also distinctively personal aspects of their lives.

87. Defendants JOHN C. TENNIS and RANDY R. LOZOYA's actions were motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN's First and Fourteenth Amendment rights secured by the U.S. Constitution, or were wantonly or oppressively done.

88. Defendants JOHN C. TENNIS and RANDY R. LOZOYA should be immediately terminated and their killing of Joseph Mann referred to the U.S. Department of Justice for criminal prosecution for violating Joseph Mann's civil and constitutional rights.

89. As a direct and proximate result of Defendants JOHN C. TENNIS and RANDY R. LOZOYA's actions and inactions, Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN suffered injuries entitling them to receive compensatory and punitive damages against Defendants JOHN C. TENNIS and RANDY R. LOZOYA.

WHEREFORE, Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN pray for relief as hereunder appears.

## SECOND CLAIM

### Municipal & Supervisory Liability

**(First & Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

90. The Second Claim is asserted by Plaintiffs ROBERT MANN SR., VERN MURPHY-

13

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR.

91. Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN reallege and incorporate the allegations of the preceding paragraphs 1 to 89, to the extent relevant, as if fully set forth in this Claim.

92. Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR., acting under color of state law and as policy-makers, maintained policies, customs, or practices permitting or deliberately indifferent to, or failed to maintain policies, customs, or practices when it was obvious that they were needed to prevent, the use of excessive force, and were the moving force behind Defendants JOHN C. TENNIS and RANDY R. LOZOYA's violation of Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN's First and Fourteenth Amendment rights secured by the U.S. Constitution.

93. Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR. ratified and approved of Defendants JOHN C. TENNIS and RANDY R. LOZOYA decision and the basis for utilizing unreasonable lethal force against Joseph Mann, without justification, where they:

 a) issued a public statement the same day and immediately after the shooting occurred that stated that Defendants JOHN C. TENNIS and RANDY R. LOZOYA's actions were justified, before sufficient investigation into the incident had occurred;

 b) failed to disseminate and actually obstructed public access to recordings and information concerning Joseph Mann's shooting;

 c) accepted and adopted, and found no reason to disagree with, the Sacramento County District Attorney's Office's findings and conclusions that Defendants JOHN C. TENNIS and RANDY R. LOZOYA's actions were lawful and appropriate;

 d) failed to find that Defendants JOHN C. TENNIS and RANDY R. LOZOYA's actions were inconsistent, uncompliant, or not conforming with Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT policies;

 e) failed to find that Defendants JOHN C. TENNIS and RANDY R. LOZOYA's actions

14

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

were inconsistent, uncompliant, or not conforming with mandatory training provided by the Commission on Peace Officer Standards and Training;

f) failed to terminate or even to reprimand, discipline, or admonish Defendants JOHN C. TENNIS and RANDY R. LOZOYA in connection with Joseph Mann's killing; and/or

g) failed to enact new or different policies, or to amend existing policies, that would prevent use of unreasonable force, specifically against persons suffering from mental illness, in the future.

94. Defendant SAMUEL D. SOMERS JR.'s actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN's First and Fourteenth Amendment rights secured by the U.S. Constitution, or were wantonly or oppressively done.

95. As a direct and proximate result of Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR.'s actions and inactions, Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN suffered injuries entitling them to receive compensatory damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, and SAMUEL D. SOMERS JR., and punitive damages against Defendant SAMUEL D. SOMERS JR.

WHEREFORE, Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN pray for relief as hereunder appears.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN seek Judgment as follows:

1. For an award of compensatory, general, and special damages against Defendants CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT, SAMUEL D. SOMERS JR., JOHN C. TENNIS, and RANDY R. LOZOYA, according to proof at trial;

2. For an award of exemplary/punitive damages against Defendants SAMUEL D. SOMERS JR., JOHN C. TENNIS, and RANDY R. LOZOYA, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or

15

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

intent, involved reckless or callous indifference to federally protected rights, or were wantonly or oppressively done;

  3.  For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, and any other statute as may be applicable; and

  4.  For an award of any other further relief, as the Court deems fair, just, and equitable, including an order directing Defendants CITY OF SACRAMENTO and SACRAMENTO POLICE DEPARTMENT to terminate the employment of Defendants JOHN C. TENNIS and RANDY R. LOZOYA and referring the killing of Joseph Mann to the U.S. Department of Justice for prosecution of Defendants JOHN C. TENNIS and RANDY R. LOZOYA for violation of Joseph Mann's civil and constitutional rights.

Dated: June 8, 2017      Respectfully Submitted,

By: _____
Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN

16

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____

**JURY TRIAL DEMAND**

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN.

Dated: June 8, 2017

Respectfully Submitted,

By: _____
Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:       (916) 443-6911
Facsimile:         (916) 447-8336

Attorneys for Plaintiffs
ROBERT MANN SR., VERN MURPHY-MANN, DEBORAH MANN, ZACHARY MANN, and WILLIAM MANN

17

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Mann v. City of Sacramento*, United States District Court, Eastern District of California, Case No. _____