UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ROBERT MANN SR., et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SACRAMENTO, et al., <br><br> Defendants. | No. 2:17-cv-01201 WBS DB <br><br> MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

Following the Ninth Circuit's remand of this matter (Mann v. City of Sacramento, 748 F. App'x 112 (9th Cir. 2018)), this court gave plaintiffs leave to amend their complaint. (See Docket No. 57.) In order to overcome the Ninth Circuit's holding that adult, non-cohabitating siblings do not enjoy a constitutional right to intimate association, plaintiffs have now amended their complaint to set forth the facts in support of their contention that they were "cohabitating" with decedent. (Docket No. 59)

The First Amended Complaint makes several allegations about decedent's housing situation in the months preceding his

1

death. First, it alleges that decedent's California identification card, valid until 2019, listed decedent's residence as plaintiff Robert Mann Sr.'s home address (FAC ¶ 31). Second, it alleges that in the period "right up until" decedent's death, the plaintiffs provided decedent housing "either with plaintiffs Robert Mann Sr. or with plaintiffs Vern Murphy-Mann or Deborah Mann." (Id. ¶ 33.) Third, it alleges that decedent "kept his clothes and personal belongings at Plaintiffs Robert Mann Sr., Vern Murphy-Mann, and Deborah Mann's homes and received mail and listed their residences as his own addresses." (Id. ¶ 34.) Fourth, it alleges that during the last six months of decedent's life, decedent would "stay out, at times for several days," and that plaintiffs would "search for him at places he habitually frequented, and would bring him back home to bathe, rest, and eat." (Id. 35.) Finally, it alleges that despite decedent's absences, the plaintiffs were "in constant contact with [him] and made sure that he knew he was welcome in their homes." (Id.) At the hearing on March 11, 2019, plaintiff's counsel clarified that in the period immediately preceding his death, decedent was spending "the majority" of his time staying at the home of one or another of the three plaintiffs, without further detail.

Defendants have moved to dismiss the First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that these allegations are insufficient to establish cohabitation and that plaintiffs thus may not bring this action for deprivation of their right of intimate association with the decedent.

As plaintiffs correctly note, "there is no controlling definition of 'cohabitation' in the context of the constitutional claims at issue in this case." (Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss at 5 (Docket No. 66).) Further complicating the court's effort to define "cohabitation" is the fact that many treatments of the term are concerned with "cohabitation" as a term of art referring, specifically, to cohabitation "like a spouse." See e.g., United States v. Costigan, 2000 WL 898455 (D. Me. 2000), aff'd, 18 F. App'x 2 (1st Cir. 2001) (observing that in light of the dictionary definition of "cohabit" as "to live together in a sexual relationship when not legally married," the term "cohabit as a spouse" is somewhat redundant and then proceeding to discuss the meaning and definition of "cohabit as a spouse."). Those authorities are of no assistance when considering whether parties are cohabitating siblings.

Accordingly, in the absence of controlling case law defining "cohabitation," in the context of this case, the court will turn to the popular definition of the word, which the California Supreme Court correctly noted is "living with or together, from the Latin 'co-' (co[- ]signifies in general with, together, in conjunction, jointly) and habitare, to dwell, to have possession of (a place)." See Kusior v. Silver, 54 Cal. 2d 603, 611-12 (1960) (citations and quotations omitted). In evaluating whether decedent cohabitated with plaintiffs in the period immediately preceding his death, the court assumes it should consider such factors as (1) whether decedent spent all or most of his time residing in the same dwelling as any given plaintiff; (2) whether he shared living expenses associated with

a plaintiff's dwelling; (3) whether he had keys to a dwelling and could come and go as he pleased; and (4) whether he kept clothes and personal affairs in the dwelling.[1]

The allegations of the First Amended Complaint do not establish any of the first three factors. Rather, the First Amended Complaint paints decedent not as a cohabitant but more a transient who was a frequent, and welcome, invitee in plaintiffs' respective homes. Decedent would "stay out, at times for several days" and then plaintiffs would "search for him at places he habitually frequented and would bring him back home to bathe, rest, and eat." (FAC ¶ 35.)

The only other relevant factual allegation is that decedent "kept his clothes and personal belongings at [p]laintiffs Robert Mann Sr., Vern Murphy-Mann, and Deborah Mann's homes and received mail and listed their residences as his own addresses." (Id. ¶ 34.) If accompanied by allegations that Joseph Mann spent all or most of his time residing in one or more of plaintiffs' homes, had a key and independent access to one or

---

[1] These factors are informed by case law applying or interpreting the term "cohabitation." See, e.g., Marcum v. McWhorter, 308 F.3d 635, 637 (6th Cir. 2002) (describing, offhandedly, cohabitation as beginning on the date when two parties "rented a townhouse and began living together" with each party "paying their share of the costs"); United States v. Ladouceur, 578 F. App'x 430, 434 (5th Cir. 2014) (considering the definition of "cohabitation" in the context of a federal statute that proscribed the possession of a firearm by those subject to a domestic violence protective order, and finding "cohabitation" where "over the span of several months, [defendant] stayed over at [applicant']s apartment most or often all days out of the week; he kept clothing and personal effects there to go directly to work in the mornings; he had a key to her apartment and was able to come and go as he pleased; and he rarely visited an apartment leased under his own name").

more of plaintiffs' homes, contributed to the maintenance of one or more of plaintiffs' homes, and rarely slept outside one or more of plaintiffs' homes, this allegation might support a plausible inference that decedent cohabitated with one or more of the plaintiffs.  Absent that type of accompanying allegation, however, the mere facts that decedent stored belongings in plaintiffs' homes, used their addresses for mail, and periodically bathed and rested in their homes, do not make him plaintiffs' "cohabitant."

The court assumes that plaintiffs have set forth all the available facts to support their claim of cohabitation, and that granting further leave to amend would be futile.

IT IS THEREFORE ORDERED that the individual defendants' Motion to Dismiss (Docket No. 59) be, and the same hereby is, GRANTED.  The First Amend Complaint and action herein are hereby DISMISSED.

Dated:  March 12, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE